NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260266-U

NO. 4-26-0266

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 25, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Rock Island County |
| Petitioner-Appellee, | ) | No. 25JA48 |
| v. | ) | |
| Solomon P., | ) | Honorable |
| Respondent-Appellant). | ) | Tionn F. Carter, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appointed appellate counsel's motion to withdraw and affirmed the trial court's judgment.

¶ 2    Respondent, Solomon P., appeals the trial court's order adjudicating his son, S.H. (born May 2022), neglected and the court's dispositional order making S.H. a ward of the court, finding respondent unable to care for him, and granting custody and guardianship to the Illinois Department of Children and Family Services (DCFS). Appointed appellate counsel has moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting there is no issue of arguable merit that may be raised on appeal. We grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4    On May 25, 2025, the State filed a petition for adjudication of wardship

concerning S.H. The petition alleged that S.H. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (Act) (705 ILCS 405/2-3(1)(b) (West 2024)) in that he was in an environment injurious to his welfare. Specifically, the petition alleged that in March 2025, DCFS received a report of a domestic violence incident involving S.H.'s parents that occurred in the presence of S.H. and his older sister, K.H. (The record indicates that S.H. and K.H. have the same mother, but K.H. is not respondent's biological child.) The petition alleged that S.H.'s mother told police officers that, during the March 2025 incident, respondent yelled at her, shoved her, grabbed her by the neck, and threw her against a wall in their home. She ran outside, and respondent followed her and hit her in the face in front of K.H. Respondent left the area with her phone, and she realized respondent had locked her out of the house while S.H. remained inside. Respondent was subsequently charged with domestic battery. The petition alleged that the police department had a history of calls to respondent's residence related to domestic disputes and respondent had one prior indicated report of neglect.

¶ 5        On August 28, 2025, the trial court entered an order awarding temporary custody of S.H. to DCFS.

¶ 6        On January 22, 2026, the trial court held an adjudicatory hearing. At the State's request, the court admitted into evidence a DCFS report from 2024 showing an indicated finding of neglect against respondent relating to an incident of domestic violence between respondent and S.H.'s mother. The report indicated that, during that incident, respondent choked S.H.'s mother and left the house with her keys and phone. S.H.'s mother followed him outside. She tried to reenter the home, but the door was locked, with S.H. inside sleeping.

¶ 7        Rejoice Hernandez, a DCFS investigator, testified that on March 3, 2025, DCFS received a report of domestic violence concerning respondent and S.H.'s mother, during which

S.H. and K.H. were present. Respondent refused to speak with her concerning the incident, and S.H.'s mother was not home when Hernandez attempted to interview her. Hernandez spoke to seven-year-old K.H. at her school. K.H. told Hernandez that respondent and her mother got into an argument and she saw respondent slap her mother in the face. K.H. and her mother went outside, and respondent followed them. Respondent then locked the house and went to the store, while two-year-old S.H. was sleeping in the locked house. K.H. said she had seen respondent hit her mother on 7 to 10 occasions. After several unsuccessful attempts to contact the children's mother, Hernandez indicated the report and recommended that the family receive intact services. The children's mother agreed to engage in intact services, but respondent did not, telling Hernandez not to contact him when she texted him about engaging in services.

¶ 8 Hernandez testified that in May 2025, DCFS received another report of domestic violence, which involved respondent choking S.H.'s mother in S.H.'s presence. Hernandez again attempted to contact respondent and S.H.'s mother by calling them and visiting their home, but they did not respond. She again interviewed K.H. at school. K.H. told her that she was not at home during the incident, but her mother had told her that respondent choked her.

¶ 9 Hernandez stated she eventually interviewed S.H.'s mother in June 2025, after receiving a third report of domestic violence. S.H.'s mother reported that she had been in an abusive relationship with respondent "off and on." She stated that whenever there was an incident of domestic violence, she would leave with the children. However, she always went back because she had nowhere else to live. She stated respondent had choked her multiple times. She stated that, during the June 2025 incident, respondent choked her and she believed she was going to die because there was no one around to get him off of her. She stated S.H. was standing nearby crying while respondent was choking her. S.H.'s mother obtained an order of protection

against respondent, and DCFS determined it was safe for the children to remain with their mother at that time.

¶ 10 Stacy Bogguess testified that she was a caseworker for DCFS. She stated that she was assigned to S.H.'s case in June 2025. She met with S.H.'s mother, who was living with the children in a domestic violence shelter, and recommended services. She attempted to meet with respondent, but he told her not to contact him. The children were taken into protective custody in August 2025. Bogguess testified that K.H. told her in August 2025 that she and S.H. had been spending time with respondent. Bogguess indicated that there was still an active order of protection against respondent at that time.

¶ 11 Marlena Atkinson-Niemeier testified that she was an investigator with DCFS. She was assigned to S.H.'s case in August 2025. DCFS had received a report of risk of harm due to the children being present during a domestic violence situation involving their parents. The report also identified a risk due to the children being around respondent when they were listed as protected parties in an order of protection. Atkinson-Niemeier attempted to contact the children's mother, but she would not answer her phone. Atkinson-Niemeier interviewed K.H. at her school, and K.H. reported that she, her mother, and S.H. had been living with respondent, and she had been having contact with him regularly. K.H. also stated she had recently seen respondent punch her mother in the chest. Atkinson-Niemeier spoke with her supervisor, and they agreed they had exhausted all avenues to protect the children while keeping them in the home. Atkinson-Niemeier took protective custody of K.H. at school that day. Respondent and the children's mother initially refused to bring S.H. to Atkinson-Niemeier, though respondent brought him to court the next day.

¶ 12 The trial court took judicial notice of a plenary order of protection (set to expire in

July 2027) that was in place involving the parents and children in the instant case. At respondent's counsel's request, the court also took judicial notice of three domestic violence cases against respondent that had been dismissed.

¶ 13 After hearing arguments, the trial court found that the State had proven by a preponderance of the evidence that the minors were neglected in that there was a substantial risk of physical injury to them based on their environment. The court found that the minors were to remain placed outside the home because it was contrary to their health, welfare, and safety to remain in the home. The court entered an adjudicatory order finding that S.H. was neglected.

¶ 14 On February 17, 2026, a dispositional hearing report and integrated assessment were filed. The dispositional report recommended, *inter alia*, that S.H. be made a ward of the court, DCFS be granted custody and guardianship, S.H. remain placed in relative foster care, and respondent obtain assessments for mental health, domestic violence, and anger management and follow all treatment recommendations. The dispositional hearing report stated respondent had admitted that his relationship with S.H.'s mother had "domestic violence concerns." The report also stated there were "collateral police reports of physical aggression and temporary orders of protection." The integrated assessment stated that, during his interview, respondent refused to discuss his recent domestic violence charges. In the "prognosis" section, the integrated assessment stated:

> "There have been numerous reports of Domestic Violence between [respondent and S.H.'s mother], some charges have been dismissed due to [S.H.'s mother] not following through or being unreachable. At the time of the interview [respondent] stated he was not supposed to speak with [S.H.'s mother], and did not share anything else."

¶ 15        On February 26, 2026, the trial court held a dispositional hearing. At the State's request, the court took judicial notice of the dispositional report, the integrated assessment filed February 17, 2026, and an updated dispositional report and integrated assessment filed after S.H.'s mother's interview. At respondent's request, the court also took judicial notice of the three criminal cases against him that had been dismissed. During argument, respondent's counsel indicated that respondent disagreed with certain aspects of the dispositional report and integrated assessment. Counsel noted that the integrated assessment stated that most of respondent's criminal charges had been dismissed, but respondent reported they had all been dismissed and that he had no domestic battery convictions. Counsel also stated the dispositional hearing report indicated respondent had admitted to having domestic violence issues with S.H.'s mother, but respondent denied ever saying that.

¶ 16        The trial court entered a dispositional order finding it was in S.H.'s best interest to be made a ward of the court. The court found respondent was unable, for other than financial reasons alone, to care for, protect, train, or discipline S.H. in that he needed to engage and make progress in visits and court-ordered reunification services. The court ordered that guardianship of S.H. be given to DCFS, with the right to place the minor. The court orally stated that custody would be granted to DCFS, and it indicated in the written order that custody would be placed with relative foster care with S.H.'s paternal grandmother. This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18        On appeal, appointed appellate counsel has moved to withdraw pursuant to *Anders*, asserting there is no issue of arguable merit that may be raised on appeal. Specifically, counsel indicates that he considered arguing that the trial court's adjudication of neglect and dispositional order were erroneous but determined that both arguments would be frivolous.

Counsel indicates that he informed respondent of his conclusion and mailed him a copy of the motion to withdraw. Respondent has not filed a response.

¶ 19    "The Act sets forth the procedures the trial court must follow in determining whether a minor should be removed from his or her parents' custody and made a ward of the court." *In re Z.L.*, 2021 IL 126931, ¶ 58. First, the court holds an adjudicatory hearing on the petition for adjudication of wardship, where the court considers only the question of whether the minor is abused, neglected, or dependent. *Id.* ¶ 59. If the trial court determines the minor is abused or neglected, the court holds a dispositional hearing to determine whether it is consistent with the health, safety, and best interests of the minor and the public that the minor be made a ward of the court. *Id.* ¶ 60.

¶ 20    The procedure for appellate counsel to withdraw set forth in *Anders* applies to proceedings under the Act. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8. Under this procedure, counsel's request to withdraw must " 'be accompanied by a brief referring to anything in the record that might arguably support the appeal.' " *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (quoting *Anders*, 386 U.S. at 744). Counsel must (1) set forth the argument in support of the issues that he or she could conceivably be raised on appeal, (2) explain why he or she believes such issues to be frivolous, (3) conclude the case presents no viable grounds for appeal, and (4) include the transcripts of the relevant hearings. *Id.*

¶ 21    We first address counsel's assertion that he considered arguing that the trial court's adjudication of neglect was erroneous but determined any such argument would be frivolous. At the adjudicatory hearing, the State must prove the allegations of abuse or neglect by a preponderance of the evidence—*i.e.*, that the allegations are more probably true than not. *Z.L.*, 2021 IL 126931, ¶ 61. "We will not reverse a trial court's finding of abuse or neglect unless it is

against the manifest weight of the evidence." *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Id.*

¶ 22        In this case, the State alleged that S.H. was neglected in that he was in an environment injurious to his welfare. See 705 ILCS 405/2-3(1)(b) (West 2024). "[T]he term 'injurious environment' has been recognized by our courts as an amorphous concept that cannot be defined with particularity." *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). However, it "has been interpreted to include the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." (Internal quotation marks omitted.) *Id.*

¶ 23        We agree with counsel that there is no nonfrivolous argument to be made that the trial court's adjudication of neglect was against the manifest weight of the evidence. The evidence at the adjudicatory hearing showed that S.H. was in an unsafe environment due to multiple instances of domestic violence between his parents, at least some of which occurred in his presence. K.H. told a DCFS investigator about an incident in March 2025 during which respondent slapped S.H.'s mother and locked her and K.H. out of the house while S.H. was still inside. An indicated DCFS report concerning a similar incident in 2024 was also admitted into evidence. Hernandez testified that S.H.'s mother told her in June 2025 that respondent had recently choked her in front of S.H., who was crying during the incident. Both S.H.'s mother and K.H. reported to DCFS personnel that there had been multiple instances of domestic violence. The evidence also showed that the children continued to reside with respondent, despite an order of protection being in place.

¶ 24        While some of the evidence at the adjudicatory hearing consisted of K.H.'s hearsay statements, these statements were corroborated by S.H.'s mother in her statements to Hernandez concerning ongoing domestic violence in her relationship with respondent. See 705

ILCS 405/2-18(4)(c) (West 2024) ("Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect.").

¶ 25　　　　We now turn to counsel's assertion that any argument that the trial court's dispositional order was erroneous would be frivolous.

> "At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court, and, if the minor is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public." *Id.* § 2-22(1).

One of the kinds of dispositional orders the court can make with respect to wards of the court is granting custody or guardianship to DCFS or a "suitable relative" if the court determines the parents of the minor are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor. *Id.* § 2-23(1), 2-27. "The court's decision will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008).

¶ 26　　　　We agree with counsel that there is no arguably meritorious argument to be made that the trial court's factual findings were against the manifest weight of the evidence or that the court abused its discretion by selecting an inappropriate dispositional order. The dispositional hearing report and integrated assessment indicated there was a history of domestic violence in respondent's relationship with S.H.'s mother and they recommended that he be evaluated for

services (including mental health, domestic violence, and anger management services) to address this. Accordingly, the court did not err by making S.H. a ward of the court or determining respondent was unable to care for, protect, train, or discipline S.H. because he needed to engage in and make progress in services.

¶ 27    While respondent presented evidence that several criminal cases against him involving allegations of domestic violence had been dismissed, the integrated assessment stated that some of the cases were dismissed because S.H.'s mother was uncooperative or unreachable. Also, though respondent's counsel indicated that respondent denied saying that there were "domestic violence concerns" in his relationship with S.H.'s mother (as the dispositional hearing report stated), appellate counsel notes that these assertions were not presented as evidence at the dispositional hearing. We also note that even if the trial court were to consider trial counsel's representations, it was not required to accept them over the contents of the report. See *Prairie Eye Center, Ltd. v. Butler*, 329 Ill. App. 3d 293, 298-99 (2002) ("It is the province of the finder of fact to resolve conflicts in the evidence.").

¶ 28                          III. CONCLUSION

¶ 29    For the reasons stated, we grant appointed appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30    Affirmed.